Okay. Mr. Matthew, when you're ready, you may proceed. May I please the court, counsel? My name is Akshay Matthew and I represent Amos Nelson Mr. Nelson was walking down the street at 11 p.m. when he was stopped by two officers who were patrolling the area in an unmarked vehicle. Mr. Nelson had committed no crimes and the officers, by their own admission, had no reasonable suspicion to stop or investigate Mr. Nelson. Officer DiMattei first got out of the car and asked Mr. Nelson if he could speak to him. Mr. Nelson responded by asking, Am I being detained? DiMattei ignored Mr. Nelson's question and instead told him that he was attempting to get his identity due to a string of robberies, recent burglaries that have been occurring in the general area. Officers at the suppression hearing testified they were not actively investigating any burglaries and defense counsel presented some evidence showing that in the weeks prior to that encounter, there were no burglaries in that particular area. The officers ignoring Mr. Nelson's question creates a, by ignoring that question, officers violated Mr. Nelson's Fourth Amendment rights because they performed a warrantless seizure of Mr. Nelson without probable cause or reasonable suspicion. Therefore, any evidence obtained as a result of that illegal seizure must be suppressed as free of the Poisonous Tree. How important is the chronology of whether or not they immediately asked him to remove his hands from his pocket? I mean, there's a lot about did dad prefer it first or did they ask him if they could speak with him first? Could you address that for me? How that might change it from consensual? With regards to the record, the only thing chronologically that's probably clear is the initial statement of can I speak with you a moment and Mr. And there is no, there is a response but it does not address that question itself. And at some point between that and when they find out he's a parolee is the two things happen is they order him to remove his hands from his pocket and they ask for his identity several times. It doesn't, in our view, matter at what point those subsequent things happen. They are in the issue of a seizure and also add to the totality of the circumstances which show that a seizure occurred. And it's our opinion that a seizure occurred from the very beginning. As soon as the officers did not respond to the question, am I being detained? By ignoring that question, that itself is a seizure. There was only one police officer at the time. When that question was asked? When that confrontation was made, yes. Based on Officer Baldwin's testimony, he was not present for that initial, those three questions, the initial question. And he seemed to have arrived just before he asked him or just after he asked him to remove his hands from his pockets. But he was present for... Well, let's assume that it was a seizure from the beginning. Doesn't a police officer have the right to protect himself at this time of night in an area that is allegedly a criminal activity to have someone remove their hands from their pockets? Are you saying that there's no right? There's actually no case law indicating that in a consensual encounter... No, I'm talking about a seizure. Oh, in a seizure? Let's just assume from the beginning it's a seizure. Isn't there law that says that even under those circumstances, a police officer has the right to have someone remove something from his pockets or her pockets? Yes. In a terror stop, they can ask and even pat down if there's reasonable suspicion that they are carrying a weapon. But if there is a seizure at the beginning, the officers, by their own testimony, stated that there was no reasonable suspicion. And to have a terror stop without any reasonable suspicion would be a Fourth Amendment violation. So at that point, it wouldn't even matter if it was consensual. That would be a clear violation of the Fourth Amendment. So it can't be part of a consensual encounter then? If he was seized? You're saying the actual request to remove his hands from his pockets cannot be part of a consensual encounter? The case law, I haven't found any where in a consensual encounter, officers can order someone to remove their hands from their pockets. Evans comes the closest where the officers ask, and that's the case that the state cites. But even in Evans, the officers first asked him to remove his hands from his pocket. That's different from here where officers testified they told him to. And also, the Fourth District in Evans said that the officers had reasonable suspicion that the defendant in that case had a weapon. So you say that's a terror stop? Yeah, it's unclear. They don't explicitly say that, but based on the fact that they said there's reasonable suspicion, it indicates that there might have been a terror stop there. The other case that's cited is this court's opinion in Biagi. And in that case, the officer is shown a flashlight or a police light, and that was late at night. And there was no indication by this court that that was for officer safety. It was just the fact that we shouldn't expect people to have to converse in the dark without risking the seizure. It doesn't seem to be an officer safety issue. To have an analogy, a consensual encounter to me seems like the equivalent of two strangers conversing in the public. So the police officer in a consensual encounter isn't supposed to be using his authority to have that conversation. So if you look at it that way, to ask for, to consider the officer's safety, that doesn't seem like a consensual encounter if the officer is fearing for his safety. It's more of a seizure, a terror stop situation in that case. How do you get around the state's forfeiture argument? The forfeiture, we don't believe there is a forfeiture issue here. The state had the burden of proving a consensual encounter in the proceedings below. And the state did make arguments for a consensual encounter, which defense counsel countered on rebuttal. The tricky situation here is that it seems that the trial court, based on a mistake of law, completely disregarded the whole consensual encounter case law and ruled on something completely different. In fact, the court itself states that had Mr. Nelson not been on parole, I would have ruled differently. So there seems to be some indication that the court may have thought there was a seizure, but because of his mistake of law, he ruled otherwise. Do you have a cipher page where the court said the defendant had not been on parole? Is it in your brief? I think the state actually has the full probe. The state does? That's fine. I'll get it. Don't waste your time. And so we don't believe there's a forfeiture issue. And finally, the fruit of the poisonous tree. Because of this illegal search, some contraband was found. And if the fruit of the poisonous tree doctrine says that it should be suppressed because it was due to an illegal search, there is an exception to that. And it's when the chain of causation from the lawful conduct has become so attenuated that the taint of the original seizure can't be removed. Attenuation is not an issue here. There's three factors for that. The first is the temporal proximity. And this is only a five minute stop. The appellate courts have held up to a 50 hour ways toward finding no attenuation. So this in such a short time in comparison is clearly favors no attenuation. And the state actually concedes this point. The second is the presence of any intervening circumstances. We believe this also favors no attenuation. Comparison here is just three in three. However, that was concerning an arrest warrant. And that's different from this case where the police found out he was on parole in an arrest warrant. The police are compelled to arrest the defendant by a court mandate here. They only discovered that Mr. Nelson was on parole. And so they have the option or the discretion to choose. I think the state wants to argue that they have the authority to arrest somebody when there's a warrant outstanding. But they're not compelled to essentially. Yeah. Do you agree with that or not? I mean, they do have the authority to search them or asked to search. Just as in they have the authority if you're a parolee. Correct. Sorry. If you're a parolee, they also have authority. I misunderstood the first question. If they're arrested, I think it's not a discretionary thing for the officer. I think they're compelled to and they must. Right. But I think what the state, as I understood their argument with respect to streets, is that basically they did have the right to. It was an extenuating circumstance because of the fact that it was part of his parole, condition of parole, that he was subject to search. In street, to my understanding, based on my understanding, I don't think the street was on parole. No, I know it wasn't. There was an arrest warrant outstanding. But I'm saying that they say that that gives them extenuating circumstances. In street, yes. But that's not present here. Okay. I think they're just checking the sayings. Are they the same? Are they similar? I would say they're different because one requires compulsion, compelling. The officer is compelled to do that action. In this case where it's parole, it's a discretionary thing where the officer can or he can choose not to. So you're saying that an officer faced with an arrest warrant has to take into custody or seize. Yes. Thank you. Ms. Camden. May it please the Court? Counsel. Jennifer Camden on behalf of the people. The defendant in the reply brief at page 4 concedes that the record is, quote, somewhat ambiguous as to the chronological order of the events that transpired. But without a record showing that chronology in granular detail, the defendant cannot meet his burden of proving that an unlawful seizure occurred. And in this case, the record is silent or ambiguous, arguably on factual points pertinent to defendant's new and forfeited theory, whichever theory that is, such as the order of DeMattei's statements to the defendant and his tone of voice when making them. Now, one way for this Court to deal with that silence and ambiguity is to consider the merits of the defendant's argument, but to construe those silences and ambiguities in favor of the State. Well, what silence are you talking about? Yeah. I mean. Well, for one thing, Your Honor, the record doesn't explicitly state when exactly the defendant removed his hands from his pockets. Yeah. There's a lot of talk about these hands from the pockets. Right. And I think there's a lot of focus on that. But what about the initial confrontation and the fact that the defendant says, am I being detained and the officers completely ignore him and then proceed to do whatever it is that they want to do? Well, I disagree with that characterization of the facts for a couple of reasons, Your Honor. First, and this goes, again, to an ambiguity in the record, as you asked about, DeMattei, and this is directly from that officer's police report, asks if he could speak to the defendant for a moment, explained that he was not in any trouble, and then asked him to remove his hands from his pockets for officer safety, and that it was at that point that the defendant stopped walking and asked if he was being detained. And DeMattei's police report and his testimony at this pressure hearing goes on to state that DeMattei responded to that question by saying that he was attempting to get his identity due to a string of recent burglaries that had been occurring in that general area. So he got a response? Yes. That's a response to, am I being detained? That was DeMattei. That seems to, what I'm saying is that it seems to ask a yes or no question. DeMattei went on. That wasn't his, he gave a multi-part response. His first part of his response, and this is from his testimony and from his police report, was that he was trying to get his identity due to a string of recent burglaries in the area and that he told the defendant that he just wanted to know who he was and that the defendant was not being accused of any crime. And, again, please note that that came after the officer's initial assurance to the defendant, which, according to the police report, occurred before the defendant asked that question, that the defendant was not in any trouble. So the parties disagree about how to characterize the evidence of DeMattei's response to the question, am I being detained? The defendant characterizes that response as ignoring or disregarding the question, and the State disagrees and argues that not only was that a response, it was a response that could not have caused any reasonable, innocent person to believe that he or she was being detained.  Which is language making that a choice on the part of the defendant. And after being told that he wasn't in any trouble, which, again, is language that would not cause a reasonable, innocent person to believe that he was being detained, and after being asked to remove his hands from his pockets for officer safety, and on that point he was asked that question about removing the hands, not told or ordered. There was evidence at the suppression hearing, Officer Baldwin, and also from the police report, DeMattei's police report, characterized that request as asking, not telling or ordering. And, again, this Court needs to take those characterizations in the light most favorable to the State. And that's the kind of thing that I want to point out. Because these arguments were not made in the court below, the defendant's argument in the court below was that the officers didn't even have the right to approach the defendant in the first place for the purpose of a consensual encounter. That's why these points were not fleshed out in the court below. That's why the State was not afforded the opportunity to drill down on that level of granular detail that reviewing courts require when ruling on whether these types of facts constitute a seizure. I also want to note that the defendant here appears to be arguing today that the alleged seizure occurred at that point when Officer DeMattei responded however one wants to characterize that response to the question, am I being detained? And I want to point out that that appears to be a shift from the defendant's argument in the briefs. In the opening brief at page 12, the defendant argues, DeMattei commanded Mr. Nelson to remove his hands from his pockets, which turned the casual encounter into a seizure. So that's why there's a lot of emphasis on the question, on the facts surrounding the defendant removing his hands from his pockets, is because that's the argument that the State believed it to be responding to in this case. So if that's changed, I want to note that that would be forfeited under Rule 341. Also, an officer can certainly ask a defendant to remove his hands from his pockets in a consensual encounter, and the answer brief discusses at length the cases involving that type of request in tandem with other orders or requests, and it's that combination of factors that would cause a reasonable person to believe that he was being detained, and none of those factors occurred here. This was a request made in the context of repeatedly assuring the defendant that he was not being accused of any crime. In fact, I'll point out for the court that DeMattei's police report states that he repeatedly told the defendant that he was not being accused of any crime. This is page C39 of the record. I self-inquired if he was being detained. I explained that there had been a series of recent burglaries, and I just wished to identify him. He explained he had not broken into any houses. I again told Amos he was not being accused of any crimes, and again explained why I wished to identify him, and that it's at that point that he gave his first name, at which point the officers recognized him as a person on mandatory supervised release. I also want to address the defendant's attack on the officer's credibility, challenged the officer's credibility. He argues that the officers testified that they approached the defendant for the purpose of initiating a consensual encounter because they have burglaries all around that area, but that there was evidence that there were two burglaries reported in town the previous week that not near the site of that encounter. Now, the parties disagree about how far that advances the ball for the defendant. Of course, it's possible for there to be burglaries all around that area, and yet none of them having occurred within the past week. But this Court need not resolve that conflict or challenge to the officer's credibility because the circuit court is presumed to have done so and in the State's favor. The defendant's argument depends on assumptions counter to the ones that this Court must make in this case. The circuit court is presumed to have found that the officers truthfully testified that they approached the defendant to initiate a consensual encounter because they have burglaries all around that area. And also, an officer can engage a consensual encounter with a citizen without suspecting him of any crime or while suspecting him of a crime. What matters is whether the officers actually performed a stop. What matters is whether they engaged in conduct that would have caused a reasonable, innocent person to believe he was not free to leave from an objective standpoint, regardless of what subjective intent or belief of any party in that encounter actually was. Ms. Campbell, I have a note here that the facts are very similar to the People v. Jackson related to the hands situation. Can you distinguish that case? Sure. Because in that case, I think the evidence was suppressed of a gun. Yes. In that case, Your Honor, an officer patrolling a high crime area saw the defendant walking up and down the block, exited the squad car, approached the defendant, and the first thing he did was to tell the defendant to remove his hands from his pockets. This is a quote from the felon court. It was not a question or a request. It was an order, and he repeated it three or four times. So is the distinction there that it was an order versus a just could you please do that? So is that what changes it from consensual to a seizure? That's one point, but there are others. One point, another point is that in the Jackson, the encounter began with the officer telling the defendant to remove his hands. In this case, the encounter began with the officer approaching the defendant, asking if he could speak with him for a moment, explaining that he was not in any trouble, and then asking him to remove his hands from his pockets. Another distinction is that in Jackson, the court noted that the officer repeated it three or four times and specifically stated that the officer made a show of authority opposite to Mendenhall when after the third or fourth command, a reasonable person would have believed he was not free to leave. Here, there was one. Didn't he later, though, put his hands back in his pocket? That case was the Evans case, which the people also discussed in the answer brief. And in that case, and this goes to the state's argument that the defendant resisted any attempted seizure because he put his hands back in his pockets. In the Evans case, the appellate court just last year in the Fourth District stated that when the defendant placed his hands back in his pockets, it was an indication that he had not fully submitted to the attempted show of authority. And so no seizure had occurred at that point. Okay. Thank you. Thank you, Ms. Campbell. Mr. Mathew? Mr. Mathew, I want to start out with a question. I know you have things you want to say. I apologize. But what about this issue that it was a stipulated bench trial, and so everything was on paper at that point for the court, right? The police reports? The police reports, the coroner's, or the lab report, I guess it was. So your client didn't testify. No. Right? So how are we supposed to get into your client's mind now when this whole argument about the hands was really not brought into fruition until the appeal? I mean, I don't see a lot of this argument in the, quote, stipulated bench trial. How do we get into your client's mind now? Well, there actually is a suppression issue. It's an objective look at what someone in my client's position would feel. Okay, but, for example, the tone of the officer, for example, one of the things that the Supreme Court has told us to look at, you know, in the confrontation. We don't have that, right? We don't have a clear timeline of the hands in the pockets. Nobody's flushed that out for us. So even though it's objective, we have to look at the evidence. And I would point out that all of that in the suppression hearing is the State's burden. I'm not talking about burden. I'm talking about what's now before us. It's all on paper. Right. So what we've got is what we've got. And what happened at the suppression hearing is that my client already established the prima facie case for suppression. It was the State's responsibility to counter that with the evidence that they claim now is missing. But you're claiming now a seizure. And a prima facie case of seizure was established in the suppression hearing below by showing that there was no reasonable suspicion and that there was a seizure. And then the State has to counter that. It becomes the State's burden to counter that by proving that it was a consensual encounter. So the evidence that the State is requesting that it now claims is absent from the record, that's something that was the State's responsibility to show. Like, for example, if the tone of voice is at issue here, the State could have presented that evidence by calling its witness. The police officers could testify to that. Okay. Go ahead with what you're going to say. And further, the trial court never held that there was no consensual encounter. It did not make that determination. So that's not something that this court should consider that the trial court held. In fact, it held that there possibly could have been. It held on a different basis. And the State says that Mr. Nelson was asked by DeMattei when, on the record, page 45, it said DeMattei testified that he was told, not asked. So it's very much like People v. Jackson, where they held told was the same as ordered. In this case, this court should find similarly. And the State also alleges that the argument was changed from the original brief. I would point out that all three of these instances of seizure were brought up in the original brief, and individually they could amount to seizure, but this court should consider them as a totality. And when you consider all three, it just brings a stronger case for a seizure here. I would just like to conclude by saying that here Mr. Nelson did everything a citizen should do during a police encounter. He asked officers if he was being detained to clarify the position he was in. He complied when police ordered him to do something, and he didn't run away or make the situation more dangerous. Mr. Nelson also knew his rights, and he knew he didn't have to talk to police if he wasn't asked, if he wasn't seized. The police, however, refused to inform him whether he was free to leave when Mr. Nelson directly asked him if he was being detained. This court should not award law enforcement that intentionally obfuscates or misleads citizens on their right to leave a police encounter. To do so would make it dangerous for citizens and also police. This court should therefore find that the officers illegally seized Mr. Nelson and should suppress any evidence that was obtained as a result of this illegal seizure. Thank you. Thank you. Okay, this matter will be taken under advisement, and we'll issue an order in due course. Thank you.